UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | INFORMATION NO. |
| | ) | |
| v. | ) | 18 U.S.C. § 371 |
| | ) | Conspiracy |
| RAY ASHLEY DIXON | ) | |
| | ) | |

THE UNITED STATES ATTORNEY CHARGES THAT:

<u>Introduction</u>

At all times relevant to this Information:

1.    Defendant Ray Ashley Dixon was a DEA-licensed pharmacist residing and working within the Southern District of Georgia. Dixon's DEA license allowed him to order, possess, and dispense controlled substances in accordance with federal and state law.

2.    Dixon owned and operated Fulghum Drugs, Inc., which did business as Fulghum Discount Drugs ("Fulghum"), a pharmacy in Baxley, Georgia. Fulghum contracted with Medicare Part D plans to provide prescription drugs to Medicare beneficiaries enrolled with such plans.

<u>Federal Controlled Substance Laws and Regulations</u>

3.    The Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"), governs the manufacture, distribution, and dispensing of controlled substances in the United States.

4.    The CSA makes it generally unlawful for any person knowingly or intentionally to distribute or dispense a controlled substance, or conspire to do so.

Licensed medical practitioners ("practitioners"), however, are authorized under the CSA to dispense controlled substances if they obtain a registration from the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 290.1.

5.     Pharmacists may dispense a Schedule II controlled substance "only pursuant to a written prescription signed by the practitioner." 21 C.F.R. § 1306.11(a). Refilling a prescription for a Schedule II controlled substance is prohibited. 21 C.F.R. § 1306.12(a).

6.     Pharmacists may only dispense a Schedule III, IV, and V controlled substance pursuant to (1) a written prescription signed by the practitioner, (2) a facsimile of a written prescription signed by the practitioner that has been sent directly to the pharmacy, (3) an electronic prescription, or (4) an oral prescription conveyed from the practitioner to the pharmacist that is promptly reduced to writing by the pharmacist. 21 C.F.R. § 1306.21(a). The CSA forbids the dispensation of controlled substances absent a valid prescription from a practitioner.

<u>Federal Health Care Fraud and Abuse Laws and Regulations</u>

7.     The Medicare Program, a "health care benefit program" as defined by 18 U.S.C. § 24, provides benefits to certain elderly and disabled individuals. Medicare is funded by the federal government and is administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS").

8.     The Georgia Medicaid Program, a "health care benefit program" as defined by 18 U.S.C. § 24, provides benefits to certain low-income individuals and

families in Georgia. Georgia Medicaid is funded by both the federal government and through state funds. Medicaid is administered, at the federal level, by HHS through its agency, CMS. In Georgia, Medicaid is administered by the Georgia Department of Community Health.

9.      Individuals who receive benefits under Medicare or Georgia Medicaid are commonly referred to as "beneficiaries" or "recipients."

10.     A Medicare or Medicaid "provider" is any organization, institution, or individual that provides health care services, items, and benefits, to beneficiaries for which payments may be made by a health care benefit program.

11.     Medicare Part D is a voluntary prescription drug benefit program in which Medicare contracts with "sponsors" to administer prescription drug plans for beneficiaries choosing to enroll in Part D. A Part D sponsor submits a bid in the year prior to the calendar year in which Part D benefits will actually be delivered. The bid contains a per member per month cost estimate for providing Part D benefits to an average Medicare beneficiary in a particular geographic area. From the bids, CMS calculates nationwide and regional benchmarks which represent the average per member per month cost. If the Part D plan sponsor's bid exceeds the benchmark, the enrolled beneficiary must pay the difference as part of a monthly premium. CMS then provides each Part D plan sponsor with advance monthly payments equal to the Part D plan sponsor's standardized bid, risk adjusted for health status, minus the monthly beneficiary premium, estimated reinsurance subsidiaries for catastrophic coverage, and estimated low-income subsidies.

12.     When a pharmacy dispenses drugs to a Medicare beneficiary, it submits an electronic claim to the beneficiary's Part D plan and receives reimbursement from the plan sponsor for the costs not paid by the beneficiary. The Part D plan sponsor then notifies CMS that a drug has been purchased and dispensed through a document called a Prescription Drug Event record, which includes the amount paid to the pharmacy. The Prescription Drug Event record is an electronically created document that includes fields of information about a specific drug transaction. CMS uses the information in the Prescription Drug Event record at the end of the payment year to reconcile its advance payments to the sponsor with actual costs the plan sponsor incurred. If a Part D Plan sponsor's actual costs exceed the estimated costs, the plan sponsor may be able to recoup some of its losses through a risk-sharing agreement with CMS.

13.     Part D Plan sponsors subcontract with many entities to provide drugs to the Medicare Part D beneficiaries enrolled in their plans, including subcontracts with pharmacy benefit managers who provide drugs through mail order and pharmacies. When a Medicare Part D beneficiary has a prescription filled, the pharmacy presents a claim to the sponsor. The claim contains information about the cost of the drug, the dispensing fee, any taxes paid, any payments made by the beneficiary, and any rebates received from the drug's manufacturer or distributor. The claim also contains a certification that the contents of the claim are true, correct, complete, and that the claim was submitted in compliance with the laws and regulations governing the Medicare program. To qualify for payment, the health care

benefit, item, or service must have been ordered by a physician, medically necessary, and in fact provided as claimed.

## COUNT ONE
*Conspiracy*
18 U.S.C. § 371

14.     Paragraphs 1 through 13 of this Information are re-alleged and incorporated by reference as if fully set forth herein.

15.     Beginning at least as early as January 2015, the exact date being unknown, and continuing thereafter until at least in or about October 2018, in Appling County, within the Southern District of Georgia, the defendant,

### RAY ASHLEY DIXON,

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit one or more of the following offenses against the United States, that is:

(a)     to knowingly execute a scheme or artifice to defraud a health care benefit program, or to obtain money under the custody or control of a health care benefit program by means of false or fraudulent pretenses, representations, or promises, in connection with the delivery of or payment for health care benefits, items or services, in violation of Title 18, United States Code, Section 1347; and

(b)     as a registrant authorized to dispense controlled substances under the Controlled Substances Act, to knowingly and intentionally distribute or dispense oxycodone, hydrocodone, and methadone, which are Schedule II controlled substances, and alprazolam, which is a Schedule IV controlled substance, outside the

scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

Manner and Means of the Conspiracy

16.     It was part of the conspiracy that some of the conspirators, including DIXON, would create fake prescriptions purportedly prescribing drugs to Medicare and Medicaid beneficiaries when the conspirators, including DIXON, knew that no physician ever prescribed such drugs and that the beneficiaries never received such drugs.

17.     It was further a part of the conspiracy that some of the conspirators, including DIXON, would create fake prescriptions purportedly prescribing drugs to individuals enrolled with private health insurance companies when the conspirators, including DIXON, knew that no physician ever prescribed such drugs and that the individuals never received such drugs.

18.     It was further a part of the conspiracy that DIXON would then fraudulently bill such individuals' health insurance companies for the prescription drugs.

19.     It was further a part of the conspiracy that some of the conspirators, including DIXON, would distribute and dispense controlled substances to individuals whom DIXON knew were not prescribed such controlled substances.

20.     It was further a part of the conspiracy that some of the individuals receiving the non-prescribed controlled substances allowed their insurance carrier to

be defrauded in exchange for the controlled substances, while other individuals paid the conspirators, including DIXON, cash in exchange for the controlled substances.

Overt Acts

21.     In furtherance of the conspiracy and to effect the illegal objects of the conspiracy, the following overt acts, among others, were committed in Appling County, within the Southern District of Georgia, and elsewhere:

(a)     From at least November 1, 2017 through at least July 12, 2018, DIXON falsified prescriptions to show that a physician (H.C.) prescribed various drugs to an individual whose initials are J.H., when DIXON knew that H.C. did not prescribe such drugs to J.H.;

(b)     From at least November 1, 2017 through at least July 12, 2018, DIXON fraudulently billed the Medicare Part D Plan sponsor for prescription drugs allegedly prescribed by H.C. to J.H., when DIXON knew that H.C. did not prescribe such drugs to J.H. and that DIXON did not dispense such drugs to J.H.;

(c)     From at latest October 27, 2017 through at least October 8, 2018, DIXON falsified prescriptions to show that a physician (W.B.) prescribed various drugs to an individual whose initials are S.T., when DIXON knew that W.B. did not prescribe such drugs to S.T.;

(d)     From at least October 27, 2017 through at least October 8, 2018, DIXON fraudulently billed S.T.'s insurance carrier for prescription drugs allegedly prescribed by W.B. to S.T., when DIXON knew that W.B. did not prescribe such drugs to S.T. and that DIXON did not dispense such drugs to S.T.;

(e)     From at least October 27, 2017 through at least October 8, 2018, DIXON paid S.T. a portion of the fraudulently obtained gains and gave S.T. Schedule II controlled substances that DIXON knew S.T. was not prescribed in exchange for S.T. allowing his insurance to be fraudulently billed; and

(f)     On or about September 15, 2018, DIXON dispensed a controlled substance to S.W., knowing that S.W. had not been prescribed such controlled substance by a practitioner.

All done in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATION

The allegations contained in Count One of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 371 set forth in Count One of this Information, the Defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.  The property to be forfeited all seized property, including, but is not limited to:

- Pineland Bank, Savings Acct. #539431,

- $105,206.00 U.S. Currency,

- The Contents of Pineland Bank Safe Deposit Box #593,

- Pineland Bank, Business Checking Acct. #5002001680,

- Pineland Bank, Business Checking Acct. #20017241,

- Pineland Bank, Personal Checking Acct. #5002000621,

- Pineland Bank, Personal Checking Acct. #60017190,

- TD Ameritrade, Acct. #864-739674,

- COR Clearing LLC, Acct. #4797-3549,

- 1st Franklin Financial, Acct. #10-200369-8,

- 1st Franklin Financial, Acct. #10-600255-5,

- 1st Franklin Financial, Acct. #10-600330-6,

- 1st Franklin Financial, Acct. #10-540940-5,

- 1st Franklin Financial, Acct. #10-540269-9,

- 2017 Ford F-150 XLT;

- 2019 GMC Sierra 1500 Denali;

- 2018 Ford F-350 Lariat;

- 1957 Chevrolet Bel-Air Sport Coupe;

- Computershare, Brokerage Acct. #C0006310061,

- Northwestern Mutual, Life Insurance Policy #17855881,

- Northwestern Mutual, Variable Annuity Contract #19430583,

- Northwestern Mutual, Variable Annuity Contract #18098063,

- Edward Jones Investments, Acct. #381-83699-1-4,

- Northwestern Mutual, Life Insurance Policy #18228234,

- Northwestern Mutual, Life Insurance Policy #22152213,

- Northwestern Mutual, Life Insurance Policy #22020258,

- Computershare, Brokerage Acct. #C0006876994, and

- 61 assorted firearms.

(Collectively, the "Subject Property").

If any of the property described above, as a result of any act or commission of the Defendant:

a.      cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).


Bobby L. Christine
United States Attorney

Jonathan A. Porter
Assistant United States Attorney
*Lead Counsel


Karl Knoche
Assistant United States Attorney
Chief, Criminal Division

J. Thomas Clarkson
Assistant United States Attorney
*Co-lead Counsel